IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Larry A. Hockman, | Civil Action No. 8:09-2073-JMC-BHH |
| Plaintiff, | |
| vs. | |
| Michael J. Astrue, Commissioner of Social Security, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Defendant. | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Larry A. Hockman, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 43 years old on January 15, 2000, his alleged onset date, and 45 years of age as of December 31, 2001, his last insured date. (R. at 82.) At the hearing, the plaintiff amended his alleged onset date, claiming that he became disabled on January 15, 2000, due to a back injury. (R. at 11, 68, 85.) He completed two years of college and served in the United States Air Force as a personnel specialist, police officer, and arms instructor from 1976 to 1996, when he retired. (R. at 80, 86, 90.)

The plaintiff applied for DIB on August 26, 2005. (R. at 68, 85.) His application was denied in an initial determination and upon reconsideration. (R. at 59-61, 63-67.) An administrative hearing with an Administrative Law Judge (ALJ) was held on July 17, 2007

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

(R. at 684-702.) On September 27, 2007, in an unfavorable decision, the ALJ found that plaintiff was not disabled within the meaning of the act. (R. at 8-18). The plaintiff was last insured[2] on December 31, 2001. (R. at. 11.) As the Appeals Council denied the plaintiff's request for review (R. at 1-4), the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1) The claimant last met the insured status requirements of the Social Security Act on December 31, 2001.
>
> (2) The claimant did not engage in substantial gainful activity during the period from his alleged onset date of January 15, 2000 through his date last insured of December 31, 2001 (20 CFR 404.1520(b) and 404.1571 *et seq.*).
>
> (3) Through the date last insured, the claimant had the following severe impairment: L5-S1 disk herniation, status post partial laminectomy at L-4 (20 CFR 404.1520(c)).
>
> (4) Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5) After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform the full range of sedentary work.
>
> (6) Through the date last insured, the claimant was unable to perform past relevant work (20 CFR 404.1565).
>
> (7) The claimant was born on June 23, 1956 and was 45 years old, which is defined as a younger individual age 45-49, on the date last insured (20 CFR 404.1563).

---

[2] To be eligible for disability insurance benefits, a claimant must demonstrate disability on or before his "date last insured." To be insured, the claimant must have at least 20 quarters of coverage in the preceeding 40 quarters. *See* 42 U.S.C. § 423(a); 20 C.F.R. §§ 404.130, 404.131.

2

(8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404-1564).

(9) Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404-1566).

(11) The claimant was not under a disability, as defined in the Social Security Act, at any time from January 15, 2000, the alleged onset date, through December 31, 2001, the date last insured (20 CFR 404.1520(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant

3

work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct

> a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, the plaintiff alleges that the ALJ erred in not properly applying the Fourth Circuit standard for evaluating the plaintiff's credibility and allegations of pain.

The ALJ concluded that the plaintiff had the RFC to perform a full range of sedentary work. (R. at 14.) As a result, the ALJ relied dispositively on the Medical Vocational Guidelines or Grid Rules to arrive at the determination of "not disabled." (R. at 17.) The plaintiff contends that mechanical reliance on the Grid Rules was improper for the presence of non-exertional limitations, namely pain.

If a claimant has no nonexertional impairments that prevent him from performing the full range of work at a given exertional level, the Commissioner may rely solely on the Grid Rules to satisfy his burden of proof. *See Aistrop v. Barnhart*, 36 Fed. Appx. 145, 146 (4th Cir. 2002); *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir.1987); *Gory v. Schweiker*, 712 F.2d 929, 930-31 (4th Cir.1983). The Grid Rules are dispositive of whether a claimant is disabled only when the claimant suffers from purely exertional impairments. *Aistop*, 36 Fed. Appx. at 146. In the case of a claimant who suffers from nonexertional impairments, or a combination of exertional and nonexertional impairments that prevent him from performing a full range of work at a given exertional level, the Grid Rules may be used only as a guide. *Id.* at 147. In such a case, the Commissioner must prove through expert vocational

5

testimony that jobs exist in the national economy which the claimant can perform. *See* 20 C.F.R. § 404.1569a (2001); *Walker v. Bowen*, 889 F.2d 47, 49-50 (4th Cir.1989).

A non-exertional limitation is one that places limitations on functioning or restricts an individual from performing a full range of work in a particular category. See *Aistop*, 36 Fed. Appx. at 147; *Gory*, 712 F.2d at 930. Non-exertional limitations generally affect an individual's ability to meet the non-strength demands of jobs and include the ability to hold, grasp, kneel, stoop, and crouch. *Id*. Pain generally is a nonexertional malady, *see id.*, *Wilson v. Heckler*, 743 F.2d 218, 222 (4th Cir.1984), but if it manifests itself only upon exertion and is consequently taken into account in the assessment of the claimant's strength, the Grids can suffice to shoulder the Commissioner's burden, *see Aistop*, 36 Fed. Appx. at 147, *Walker*, 889 F.2d at 49.

In other words, the mere presence of a non-exertional limitation does not eliminate reliance on the Grid Rules; the limitation must actually erode the plaintiff's ability to perform the full range of a particular level of work. Here, the ALJ found that the plaintiff's residual functional capacity allowed him "to perform the full range of light work, i.e., her residual functional capacity was not reduced by any nonexertional factors." *Aistop*, 36 Fed. Appx. at 147.

So long as that conclusion was based on substantial evidence, reliance on the Grid Rules would not justify any remand. The plaintiff, of course, disagrees that pain did not erode his ability to do the full range of sedentary work. To that end, he has challenged the ALJ's credibility assessment concerning the plaintiff's complaints of pain. The plaintiff challenges both the standard of evaluation used and the ALJ's treatment of various pieces of evidence.

Federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of pain in disability determinations. *See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996). Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594.

First, "there must be objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 591 (quotation and emphasis omitted). This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of the claimant's asserted pain." *Id.* at 594. Second, and only after the threshold inquiry has been satisfied, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595. When the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted. *Id.* at 596.

It is critical to proceed through the steps in order, because "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain . . . ." *Id.* at 593. Said differently, once an ALJ concludes that an impairment could reasonably be expected to produce the pain alleged, he ought to view any inconsistency or defect in the plaintiff's subjective testimony through a more discriminating lense because the plaintiff's subjective allegations, at that point, are consistent with the objective expectations.

The plaintiff contends that the ALJ "totally dismissed the assertions of severe pain . . . ." (Pl. Brief at 19.) This is simply not accurate. The ALJ, in fact, expressly recognized and applied the above standard. (R. at 14.) The ALJ found that the plaintiff's impairments could reasonably be expected to produce some of the alleged symptoms but that the plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (R. at 15.) In support, the ALJ cited the fact that the plaintiff (1) used the computer 6 hours in a day; (2) never reported to any of his doctors that he needed to use a staff or have assistance with dressing and going out; (3) reported in April 2000 that he had no complaints of severe pain or lifestyle changes; (4) reported in September 2000 that his hobbies included horse back riding and playing computer games;

and (5) overstated his reliance on a dog for help with his impairments. (R. at 15, 198,298.) The ALJ found that these inconsistencies undermined the plaintiff's contention that he could not perform the demands of sedentary work.[3]

As an initial matter, the plaintiff has only contested the ALJ's reasoning concerning computer usage and the assistance canine, two of the five bases. (Pl. Brief at 20-21.) Accordingly, whatever mischaracterization or error made in regards to those reasons does not effect the substantialness of the other grounds cited.

As to the plaintiff's specific complaints, however, the Court is not persuaded. The plaintiff contends that the ALJ's consideration of his testimony that he uses the computer 6 hours a day does not account for the flexibility one might have both to spread those hours over the entirety of a 24-hour day and to physically accommodate one's limitations differently than you would be able to in a work environment. First, the ALJ was not drawing any greater conclusion from this testimony other than it was almost certainly at odds with a representation that he could not sit for more than 15 minutes at a time. (R. at 15.) In other words, the ALJ cited the testimony for a fairly narrow point – not that he sat for three hours straight but that he likely sat for more than 15 minutes at a time. Second, the plaintiff has not produced any evidence to the contrary. He has not suggested at what intervals he actually uses the computer or in what special ways he compensates for his impairments at home that would be impractical elsewhere. Instead, he has hypothetically posed that "[t]here are many ways a person with chronic back pain can make adjustments in order to be able to use a computer . . . ." (Pl. Brief at 19.) The plaintiff accuses the ALJ of making assumptions but has not shown anywhere in the record evidence that such assumptions are misplaced. Frankly, without some affirmative evidence or testimony of the plaintiff to the

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out the job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

contrary, the most logical interpretation of 6 hours computer usage is that certain of those intervals would occur in greater than 15 minute intervals. The Court simply cannot conclude that whether or not that is, in fact, the truth of the matter is some failing of the ALJ's; it is a failing of the plaintiff's evidence and proffered testimony.

The plaintiff also takes issue with the ALJ's conclusion that the plaintiff's testimony regarding use of a trained assistance dog prior to his date last insured was exaggerated and not supported by the evidence. The record shows no mention in the treatment notes prior to December 31, 2001, that the plaintiff required an assistance dog remain with him in case he fell. In fact, the plaintiff's dog did not become registered as an assistance dog until November 2002, almost two years after his alleged onset date, January 15, 2000 (R. at 11). (See R. at 624.)

The plaintiff argues that it takes 6 to 18 months to train an assistance dog and, therefore, extrapolating back from November 2002, training for his dog would have begun within a time period consistent with his testimony that he was falling and having difficulty getting back up prior to the end of 2001. The plaintiff, however, admits that there is no evidence of the actual length of time his dog was trained. (R. at 20.) He relies on a generic estimate from a canine assistants web site. *Id.* Such an admission, affirms the ALJ's observation that the plaintiff's testimony in this regard was "unsupported by the record." (R. at 15). Moreover, even to the extent this evidence was credited by the ALJ beyond its means, the ALJ cited other substantial evidence for disbelieving the plaintiff, as discussed above, which justifies his conclusion.

The ALJ also cited objective medical evidence inconsistent with the extent of pain and other symptoms alleged by the plaintiff. (R. at 16.) Certainly, as the plaintiff has recited, the record reveals that he reported an exacerbation of his back pain in January 2000, and was diagnosed with a lumbar disk herniation. (R. at 271, 284, 281, 289-90.) No medical source, however, stated prior to his date last insured, that the plaintiff suffered from disabling limitations. *See Lee v. Sullivan*, 945 F.2d 687, 693 (4th Cir. 1991). In February

9

2000, the plaintiff was restricted from bending, stooping, or squatting (R. at 299), and in October 2000, Dr. Werschkul stated that the plaintiff was limited to no repetitive bending or stooping and no lifting over 25 pounds. (R. at 283.) Notably, the ALJ assigned significant weight to a Dr. J.D. Werschkul's opinion (R. at 16). Even adopting these limitations, though, the plaintiff was capable of sedentary work. (R. at 213.) Further, as found by the ALJ, the VA rating opinion of 40 percent in May 2000, also failed to support the plaintiff's claims of disability. (R. at 16.) *See, e.g., Waters v. Gardner*, 452 F.2d 855, 858 (9th Cir. 1971) (noting that physician's disability ratings of 50% or less supported the ALJ's finding that claimant was not disabled). Moreover, Dr. Robert Mathews, state agency physician, throughly reviewed the record, and determined that, prior to December 31, 2001, Plaintiff was capable of performing a range of light work. (R. at 152-58.) The plaintiff has not contested these medical considerations, which were inconsistent with his testimony of disabling pain.

In all, the Court recommends that the decision of the ALJ should be considered as having been based upon substantial evidence. To the extent the ALJ did not expressly discuss every factor enumerated in 20 C.F.R. § 404.1529(c), no error was made. The ALJ identified such factors and was only obligated to consider them. As the defendant contends, it is sufficient that the decision contain "specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7p. As discussed, it did.

The ALJ applied the appropriate credibility standard and cited substantial evidence to conclude that the plaintiff's pain did not erode his ability to perform the entire range of sedentary work such that the Grid Rules could be used.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED

                                                                     s/Bruce Howe Hendricks
                                                                     United States Magistrate Judge

September 15, 2010
Greenville, South Carolina